UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


NINA ALEXANDER, ET AL.                              CIVIL ACTION

VERSUS                                              NO: 06-5405

CITY OF GRETNA, ET AL.                              SECTION: "S" (5)


**ORDER AND REASONS**

**IT IS HEREBY ORDERED** that the Motion for Summary Judgment to Dismiss the Claims of Joycelyn Askew and Quentin Askew, filed by defendants, the City of Gretna and Chief Arthur Lawson (Doc. #111), is **GRANTED**, as to the Askew's claims for violations of the Fourth Amendment brought pursuant to 42 U.S.C. § 1983, and those claims are **DISMISSED**. The court will defer ruling on the motion as it pertains to the Askews' Louisiana law claims against the City of Gretna and Chief Arthur Lawson pending a motion for summary judgment from the City of Gretna and Chief Arthur Lawson regarding Signora Durett's and Patryce Jenkins' remaining § 1983 claims for violations of the Fourth Amendment.

**IT IS FURTHER ORDERED** that the Motion for Partial Summary Judgment regarding Subclass A's claims for unlawful seizure and false imprisonment filed by defendants, the City of Gretna and Chief Arthur Lawson (Doc. #112), is **GRANTED**, as to Subclass A's claims for

unlawful seizure brought under 42 U.S.C. § 1983, and those claims are **DISMISSED**. The court will defer ruling on the motion as it pertains to the Subclass A's Louisiana law claim for false imprisonment against the City of Gretna and Chief Arthur Lawson pending a motion for summary judgment from the City of Gretna and Chief Arthur Lawson regarding Signora Durett's and Patryce Jenkins' remaining § 1983 claims for violations of the Fourth Amendment.

**IT IS FURTHER ORDERED** that Subclass A's claims for excessive force under the Fourth Amendment brought pursuant to 42 U.S.C. § 1983, against the City of Gretna and Chief Arthur Lawson are **DISMISSED.**

**IT IS FURTHER ORDERED** that the Motion for Partial Summary Judgment filed by defendant, Sheriff Newell Normand (Doc. #131), is **GRANTED**, as to the claims of Joycelyn Askew, Quentin Askew, Signora Durett, and Patryce Jenkins for violations of the Fourth Amendment brought pursuant to 42 U.S.C. § 1983, and those claims are **DISMISSED**. The court will defer ruling on the motion as it pertains to the Louisiana law claims of Joycelyn Askew, Quentin Askew, Signora Durett, and Patryce Jenkins against the City of Gretna and Chief Arthur Lawson pending a motion for summary judgment from the City of Gretna and Chief Arthur Lawson regarding Signora Durett's and Patryce Jenkins' remaining § 1983 claims for violations of the Fourth Amendment.

**BACKGROUND**

In the days immediately following Hurricane Katrina, plaintiffs, Nina Alexander, Jocelyn Askew, Quinton Askew, Frances B. Bowie, Signora Durette, and Patryce Jenkins, attempted to flee

New Orleans by crossing the Crescent City Connection on foot. Officers of the Gretna Police Department and/or deputies from the Jefferson Parish Sheriff's office did not permit them to cross.

Plaintiffs filed a complaint, pursuant to 42 U.S.C. § 1983 against the City of Gretna Police Department through the City of Gretna; Arthur Lawson, Chief of Gretna Police Department; unknown officers of the Gretna Police Department; the Jefferson Parish Sheriff's Office; Jefferson Parish Sheriff Newell Normand;[1] and unknown officers of the Jefferson Parish Sheriff's Office.

Plaintiffs allege that the law enforcement officers threatened them with the use of physical force, physically assaulted them and committed acts of battery, fired loaded weapons, used excessive force while confining them or placing them under arrest, pressed loaded firearms against their bodies, held them in headlocks or chokeholds, and threw them to the ground to prevent them from crossing the bridge and entering the City of Gretna. Plaintiffs contend that Chief Lawson and Sheriff Normand ordered their officers to act in this manner. They allege that the conduct violated their First Amendment right of peaceful assembly, Fifth and Fourteenth Amendment rights of due process, Fourteenth Amendment right of equal protection, Fourth Amendment right against unreasonable search and seizure, Eighth Amendment right against cruel and unusual punishment, the right to travel freely under Article IV, Section 2, and the right of interstate travel under Article I, Section 8.[2] Plaintiffs also allege that Chief Lawson and Sheriff Normand are liable under state law

---

[1] Sheriff Normand was named as a party upon the death of Sheriff Harry Lee.

[2] On December 3, 2008, the court granted the motion for partial summary judgment of the City of Gretna, Gretna Police Department, and Chief Lawson, dismissing the substantive due process claims of violation of the right of intrastate travel and interstate travel and the equal protection claims. (Doc. #64). At the pre-trial conference held on July 15, 2010, plaintiffs dismissed the following claims: First Amendment right of peaceful assembly; Fifth Amendment right of due process; and Eighth Amendment right against cruel

for the damages occasioned by the deputies. Specifically, plaintiffs allege that they are liable for Louisiana law claims of false imprisonment, intentional infliction of emotional distress, assault, and battery.

Plaintiffs also sought to pursue their claims as a class action, pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(3), and 23(c)(5). Plaintiffs filed a motion to certify the class, proposing that the class be divided into subclasses. The court certified only Subclass A (See Doc. # 90), which is represented by Nina Alexander and Francis Bowie and consists of:

> **SUBCLASS A**: An opt-out personal injury class of individuals who were employed by the Regional Transit Authority (RTA), their family members, friends who were assaulted, battered, and unlawfully detained through the use of excessive force as a result of the closure of the Crescent City Connection to pedestrian traffic, on August 30, 2005, in an area surrounding the bus terminal beneath the Westbank Expressway in the Parish of Jefferson.

Some individual named plaintiffs, Joycelyn and Quinten Askew, Signora Durette, and Patryce Jenkins, also maintained their claims outside of the class action.

After the class certification, Sheriff Normand filed a motion for summary judgment seeking the dismissal of the class's claims against him and the Jefferson Parish Sheriff's office arguing that the class did not assert any claims of unlawful actions taken by him or any employees or deputies of the Jefferson Parish Sheriff's office. The court granted the motion, but recognized that the order did not apply to the claims of the individual plaintiffs. (See Doc. #110).

The City of Gretna and Chief Lawson have filed motions for summary judgment regarding the claims of individual plaintiffs Joycelyn and Quentin Askew, and the claims of Subclass A

---

and unusual punishment. (Doc. #134).

regarding their alleged unlawful detention under the Crescent City Connection in Gretna. Also, Sheriff Normand has filed a motion for partial summary judgment regarding the claims of the individual plaintiffs.

## ANALYSIS

**A.    Legal Standard**

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 809 (5th Cir. 1991); FED. R. CIV. PROC. 56(c). If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. Celeotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986). The non-movant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents to properly support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case. Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

**B.    Municipal Liability Under § 1983**

Plaintiffs allege that the City of Gretna, and Chief Lawson and Sheriff Normand, in their official capacities, were involved in an agreement to close the Crescent City Connection to pedestrian traffic, which set the stage for officers from three law enforcement agencies to violate

plaintiffs' constitutional rights to be free from unlawful seizure and use of excessive force during the restraint of liberty which are guaranteed by the Fourth Amendment.[3]

A suit against Chief Lawson in his official capacity is in essence a suit against the City of Gretna; and a suit against Sheriff Normand in his official capacity is in essence a suit against Jefferson Parish. Woodard v. Andrus, 419 F.3d 348, 352 (5th Cir. 2005) (citing Monell v. Dep't of Soc. Serv., 98 S.Ct. 2018, 2035 n.55 (1978)). A local governmental body is liable for damages under § 1983 for constitutional violations resulting from official city policy. See Monell, 98 S.Ct. at 2035-36. A municipality or government body cannot be held vicariously liable under §1983 for the constitutional torts of its employees or agents. Id. at 2037. Consequently, the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability. Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001). To establish liability for a constitutional violation against the governmental bodies, the plaintiffs must prove three elements: (1) a policy maker; (2) an official policy; and (3) a violation of constitutional rights whose "moving force" is the policy or custom. Monell, 98 S.Ct. at 2037.

The "policy maker" prong is satisfied if actual or constructive knowledge of a policy is attributable to the municipality's governing body or to an official to whom the municipality has delegated policy making authority. Webster v. City of Houston, 735 F.2d 838, 842 (5th Cir. 1984)

---

[3] Plaintiffs contend that because the City of Gretna, Chief Lawson, and Sheriff Normand were involved in making the policy, it is irrelevant whether or not they can identify a Gretna Police Officer or a Jefferson Parish Sheriff's deputy who violated their rights.

(*en banc*). Presumptive policymakers for the police include the mayor, the city counsel and the chief of police. Id.

The "official policy" prong requires that the deprivation of constitutional rights be inflicted pursuant to an official custom or policy. "Official policy is ordinarily contained in duly promulgated policy statements, ordinances or regulations." Piotrowski, 237 F.3d at 579. However, a policy may also be a custom that is " . . . a persistent, widespread practice of City officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy . . ." Id. (quoting Webster, 735 F.2d at 841).

To satisfy the "moving force" prong, the plaintiff must show culpability and causation. A municipality is culpable under § 1983 if: (1) the official policy is unconstitutional; or (2) if the official policy was "promulgated with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result." Id. (quoting Bryan County, 117 S.Ct. at 1389). "Deliberate indifference of this sort is a stringent test, and 'a showing of simple or even heightened negligence will not suffice' to prove municipal culpability." Id. (quoting Bryan County, 117 S.Ct. at 1389). "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference . . ." Alton v. Texas A & M Univ., 168 F.3d 196, 201 (5th Cir. 1999). "For an official to act with deliberate indifference, the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." City of Canton v. Harris, 109 S.Ct. 1197, 1204. Generally,

7

proving deliberate indifference requires proving a pattern of violations. Cousin v. Small, 325 F.3d 627, 637 (5th Cir. 2003) (quoting Thompson v. Upsher County, 245 F.3d 447, 459 (5th Cir. 2001)).

    1.    **Subclass A: § 1983**

        a.    **Unlawful Seizure**

Subclass A claims that, on August 30, 2005, after they were bused over the Crescent City Connection to a bus terminal beneath the Westbank Expressway in Jefferson Parish, Louisiana, they were detained at gun point by Gretna Police Officers while they awaited charter buses to transport them out of the area. They allege that this constituted an unlawful seizure under the Fourth Amendment to the Constitution by the City of Gretna and Chief Lawson that resulted from the adopting of the policy of closing the bridge to pedestrians instituted at a meeting on September 1, 2005.

Subclass A alleges that the Chief Lawson was instrumental in instituting for the City of Gretna the policy of prohibiting pedestrians from crossing the Crescent City Connection. Chief Lawson is a "policy maker" and Subclass A has pointed to a particular "official policy." However, Subclass A has not shown that the policy it points to was the "moving force" behind the alleged constitutional violation of unlawful seizure.

Subclass A alleges that they were unlawfully seized by Gretna Police Officers after they had been bused across the Crescent City Connection and dropped off at a bus terminal beneath the Westbank Expressway in Jefferson Parish, Louisiana. The policy of prohibiting pedestrians from crossing the Crescent City Connection could not be the "moving force" behind the alleged unlawful seizure because Subclass A was bused across the bridge, they did not walk. Further, the policy of

prohibiting pedestrians from crossing the Crescent City Connection was not officially instituted until September 1, 2005, and this alleged seizure occurred on August 30, 2005. Therefore, the City of Gretna and Chief Lawson are entitled to summary judgment on Subclass A's § 1983 claims of unlawful seizure under the Fourth Amendment, and those claims are DISMISSED.

### b. Excessive Force

Subclass A's remaining § 1983 claim against the City of Gretna and Chief Lawson for use of excessive force in restraining liberty must be dismissed for the same reasons as their claim for unlawful seizure. Specifically, Subclass A cannot show that the policy of preventing pedestrians from crossing the Crescent City Connection was the moving force behind the alleged use of excessive force in restraining their liberty on August 30, 2005, because they did not walk across the bridge and the policy was not officially instituted until September 1, 2005. Therefore, Subclass A's § 1983 claim against the City of Gretna and Chief Lawson for use excessive force in restraining liberty is DISMISSED.

### 2. Individual Plaintiffs: § 1983

### a. Facts Regarding Joycelyn and Quentin Askew

Joycelyn and Quentin Askew are a mother and son who maintain individual claims in this litigation. On Friday, September 2, 2005, the Askews attempted to walk across the Crescent City Connection to their home in Algiers. When they approached the bridge at the Tchoupitoulas off-ramp, they were stopped by armed police officers dressed in black pants and black t-shirts that said "POLICE." The Askews were not permitted to cross the bridge on foot. At their respective depositions, neither Joycelyn nor Quentin Askew could identify the jurisdiction of those officers.

9

However, there were no Jefferson Parish Sheriff's Office personnel assigned to the Tchoupitoulas off-ramp of the Crescent City Connection after Hurricane Katrina.

After the Askews' unsuccessful attempt to walk across the Crescent City Connection, Quentin Askew decided to ask another officer to drive them across the bridge in exchange for $200. Quentin Askew approached the officer from behind and said "excuse me." According to Quentin Askew, the officer turned around and pointed a gun at him and said "no" before Askew could ask for the ride. Quentin Askew testified that the officer did not have his finger on the trigger of the weapon. Thereafter, the Askews decided to walk uptown to Joycelyn Askew's brother's house and eventually got a ride to Baton Rouge, Louisiana and then to Georgia.

### b. Facts Regarding Signora Durett and Patryce Jenkins

Sheriff Normand moved to dismiss Signora Durett's and Patryce Jenkins' § 1983 claims for alleged violations of the Fourth Amendment's guarantees to be free from unlawful seizure and the use of excessive force in restraining liberty.[4]

Patryce Jenkins' testified that she encountered one Jefferson Parish Sheriff's deputy who was pleasant. She also testified that she was stopped by Gretna police officers who were verbally abusive and used racial slurs in telling her that she could not walk across the bridge. Further, she testified that one of the officers fired a warning shot into the air, and then she walked to the Convention Center where she remained until she was evacuated.

---

[4] The City of Gretna and Chief Lawson have not moved for summary judgment on Signora Durett's or Patryce Jenkins' remaining § 1983 claims against them for violations of the Fourth Amendment. This order does not apply to those claims.

Signora Durette's did not testify to any incidents involving a Jefferson Parish Sheriff's deputy. She testified that about a half an hour after she was denied access to the bridge on foot, she was picked up by a military convoy and driven across to the New Orleans Saints' training camp from where she was then transported to Baton Rouge.

        **c.**        **Analysis Regarding Joycelyn Askew, Quentin Askew, Signora Durett and Patryce Jenkins**

The individual plaintiffs, Joycelyn Askew, Quentin Askew, Signora Durett and Patryce Jenkins, allege that the Chief Lawson and Sheriff Normand, or his predecessor Sheriff Lee, were instrumental in instituting for the City of Gretna and Jefferson Parish the policy of prohibiting pedestrians from crossing the Crescent City Connection and entering the City of Gretna. The court has already determined that the policy of preventing pedestrian traffic on the Crescent City Connection after Hurricane Katrina was not a violation of plaintiffs' right to interstate travel because it was a reasonable restriction. (See Doc. #64). Specifically, the court found that there were compelling safety and welfare reasons for refusing to allow people to cross the Crescent City Connection on foot after Hurricane Katrina because at the same time that plaintiffs were attempting to walk across the bridge, there was heavy vehicular traffic, including emergency vehicles, on the bridge to and from the east and west banks of New Orleans; there were hundreds of people without food or water attempting to cross the bridge; the City of Gretna had no food, water, or shelter for the evacuees; the bridge was never open to pedestrian traffic.

The individual plaintiffs, Joycelyn Askew, Quentin Askew, Signora Durett and Patryce Jenkins, cannot show that the policy of preventing pedestrian traffic on the Crescent City Connection

unconstitutionally deprived them of their right to be free from unlawful seizure and the use of excessive force in restraining liberty under the Fourth Amendment by either the City of Gretna and/or Jefferson Parish. A seizure occurs when government actors have "by means of physical force or show of authority, ... in some way restrained the liberty of a citizen." Terry v. Ohio, 88 S.Ct. 1868, 1879 n. 16 (1968). In Graham v. Connor, 109 S.Ct. 1865, 1871 (1989), the Supreme Court of the United States explicitly held that a claim that arises in the context of the restraint of liberty of a free citizen is properly characterized as one invoking the protections of the Fourth Amendment and is analyzed under the reasonableness standard. "Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." Id.; see also Saucier v. Katz,121 S.Ct. 2151, 2158 (2001) (analysis is under Fourth Amendment standard, not substantive due process principles).

Neither the Askews, nor Signora Durett have set forth facts to support an unreasonable restraint of liberty in violation of the Fourth Amendment. Their deposition testimony indicates that, in their encounters with law enforcement, they were informed of certain emergency restrictions that were in place and were informed that they could not walk across the bridge. They were all transported out of the area and on to Baton Rouge shortly after they were not permitted to walk across the bridge. Further, Patryce Jenkins has not shown that her liberty was unconstitutionally restrained. Because restricting pedestrian traffic on the Crescent City Connection was a reasonable restriction, it is not an unreasonable restraint of liberty. Therefore, the City of Gretna, Chief Lawson, and Sheriff Normand are entitled to summary judgment on the Askews' § 1983 claims, and Sheriff

12

Normand is entitled to summary judgment on the Signora Durett's and Patryce Jenkins' § 1983 claims; and those claims are DISMISSED.

## CONCLUSION

**IT IS HEREBY ORDERED** that the Motion for Summary Judgment to Dismiss the Claims of Joycelyn Askew and Quentin Askew, filed by defendants, the City of Gretna and Chief Arthur Lawson (Doc. #111), is **GRANTED**, as to the Askew's claims for violations of the Fourth Amendment brought pursuant to 42 U.S.C. § 1983, and those claims are **DISMISSED**. The court will defer ruling on the motion as it pertains to the Askews' Louisiana law claims against the City of Gretna and Chief Arthur Lawson pending a motion for summary judgment from the City of Gretna and Chief Arthur Lawson regarding Signora Durett's and Patryce Jenkins' remaining § 1983 claims for violations of the Fourth Amendment.

**IT IS FURTHER ORDERED** that the Motion for Partial Summary Judgment regarding Subclass A's claims for unlawful seizure and false imprisonment filed by defendants, the City of Gretna and Chief Arthur Lawson (Doc. #112), is **GRANTED**, as to Subclass A's claims for unlawful seizure brought under 42 U.S.C. § 1983, and those claims are **DISMISSED**. The court will defer ruling on the motion as it pertains to the Subclass A's Louisiana law claim for false imprisonment against the City of Gretna and Chief Arthur Lawson pending a motion for summary judgment from the City of Gretna and Chief Arthur Lawson regarding Signora Durett's and Patryce Jenkins' remaining § 1983 claims for violations of the Fourth Amendment.

**IT IS FURTHER ORDERED** that Subclass A's claims for excessive force under the Fourth Amendment brought pursuant to 42 U.S.C. § 1983, against the City of Gretna and Chief Arthur Lawson are **DISMISSED.**

**IT IS FURTHER ORDERED** that the Motion for Partial Summary Judgment filed by defendant, Sheriff Newell Normand (Doc. #131), is **GRANTED**, as to the claims of Joycelyn Askew, Quentin Askew, Signora Durett, and Patryce Jenkins for violations of the Fourth Amendment brought pursuant to 42 U.S.C. § 1983, and those claims are **DISMISSED**. The court will defer ruling on the motion as it pertains to the Louisiana law claims of Joycelyn Askew, Quentin Askew, Signora Durett, and Patryce Jenkins against the City of Gretna and Chief Arthur Lawson pending a motion for summary judgment from the City of Gretna and Chief Arthur Lawson regarding Signora Durett's and Patryce Jenkins' remaining § 1983 claims for violations of the Fourth Amendment.

New Orleans, Louisiana, this  17th  day of September, 2010.

_____
**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**